**Application of Leonard J. LERNER.**
**Patent Appeal No. 8470.**

United States Court of Customs and Patent Appeals.
March 11, 1971.

Theodore J. Criares, New Brunswick, N. J., attorney of record, for appellant.

Lawrence S. Levinson, Merle J. Smith, New Brunswick, N. J., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1, 2, 4–9, and 12–13 of appellant's application entitled "Pharmaceutical Compositions."[1] Two claims have been allowed.

The invention relates to parenterally administrable physiologically active compositions which when administered to female humans in a single injection will effectively prevent conception for an entire average menstrual period, i. e., twenty to twenty-eight days. Claim 1 is illustrative of the composition claims:

1. A composition for prevention of conception comprising a parenterally administrable combination of a protracted steroidal progestational agent selected from the group consisting of progestogens which when administered in a single, intramuscularly injection to estrogen-primed immature female rabbits induce uterine secretory gland proliferation for a period of from about twenty to twenty-five days; and a protracted steroidal estrogenic agent selected from the group consisting of estrogens which when administered in a single subcutaneous injection to ovariectomized mature female rats will induce cornified vaginal smears for from about ten to fifteen days.

Claim 2 recites the proportions of about 10 to 20 parts by weight of the progestogen and about 0.5 to 3 parts by weight of the estrogen. Claim 4 calls for the composition in a pharmaceutically acceptable nontoxic parenterally administrable vehicle, with claim 5 limiting the composition of claim 4 by reciting the ranges of proportions as in claim 2.

Claims 6–9 and 12–13 are directed to a method of preventing conception by parenteral administration of the compositions. Claims 7 and 9 recite the range of proportions as in claim 2. Claim 12 specifies the acetophenone derivative of $16\alpha$, $17\alpha$-dihydroxyprogesterone as the progestogen and estradiol enanthate as the estrogen. Claim 13, depending from claim 12, calls for 150 mg. of the progestogen and 10 mg. of the estrogen.

The references relied upon are:

Lozinski 3,051,624 August 28, 1962

Henshaw, "Physiologic Control of Fertility," Science, Vol. 117:3048, pages 572–582, May 29, 1953.

Lerner et al. (Lerner), "Biological Activities of $16\alpha$, $17\alpha$ Dihydroxyprogesterone Derivatives," Soc. Exp. Biol. Med., Vol. 106, pages 231–234, February 20, 1961.

Lozinski teaches that estrogens having prolonged estrogenic activity were known to the art. It is disclosed that long-acting estrogens can be combined with androgens and quick-acting estrogens as a treatment for the menopause syndrome. The treatment is administered parenterally. Lozinski discloses that suitable long-acting estrogens are the mono- or di-fatty acid ester of estradiol, including estradiol dienanthate.

The Henshaw article discusses the efforts that had been made up to 1953 for fertility control. It is stated that "Long and Bradbury * * * gave daily doses of 25 mg of progesterone plus 2.5 mg of estrogen to women and found a delay of menstration of 3 to 6 weeks * * *."

The Lerner article recognizes that long-acting progestogens were available. The progestogens discussed include the

1. Serial No. 428,189 filed January 26, 1965 as a continuation-in-part of application serial No. 222,946 filed September 11, 1962.

acetophenone derivative of 16α, 17α-di-hydroxyprogesterone. Lerner indicates that the acetophenon derivative may be parenterally administered, and that it maintains a progestational effect for over 25 days. It is also indicated that the acetophenone derivative when given simultaneously with estradiol benzoate (a short-acting estrogen) showed anti-estrogenic activity equivalent to that elicited by similar doses of progesterone.

The examiner rejected all the claims under 35 U.S.C. § 112, and also under 35 U.S.C. § 103 as unpatentable over Henshaw, Lozinski and Lerner. The board affirmed the § 103 rejection, reasoning that:

> Lerner et al. show the progestogens claimed having the protracted effect recited in the claims. Lozinski shows estrogens having the long acting effect used in long acting hormone preparations. Both Lerner et al. and Lozinski administer the hormone compositions by injection. * * *

> While these two references do not show the combination of these hormones, Henshaw shows * * * that it has been old to combine progesterone and estrogen within the ratio of proportions claimed into a composition to be administered orally. The hormones shown by Henshaw are admittedly short acting in their effects. Since a long acting composition is desired, we consider it would be obvious to those skilled in the art to use long acting hormones which are old and which are shown by Lerner et al. and Lozinski. Since both of these long acting hormones may be administered by injection in order to obtain their long acting effects, it is believed that it would be obvious to those skilled in the art to inject the mixture of long acting hormones claimed for the purposes intended.

While conceding that Lerner and Lozinski show that long-acting progestogens and long-acting estrogens were known and available to workers in the art, appellant contends that there is no teach-ing of combining such progestogens and estrogens to obtain an injectable long-acting contraceptive agent. It is appellant's position that Henshaw merely teaches the combination of short-acting progestogens and estrogens for use on a daily basis, and that Henshaw in no way indicates that long-acting injectable agents would be feasible for the desired result.

We cannot agree with appellant. The board clearly recognized that the Henshaw article specifies using only short-acting hormones in daily doses; how-ever, it felt that the Henshaw teaching of combining short-acting progestogens and estrogens in the recited proportions made obvious the combination of known long-acting progestogens and estrogens. We find no error in this conclusion. It appears to us that even as limited as the Henshaw teaching is, it still suggests the combination of a progestogen and an estrogen as a contraceptive agent. In our opinion from this teaching, when considered with Lerner and Lozinski, ap-pellant's claimed invention as a whole would have been obvious to one of ordi-nary skill in the art.

Combining the long-acting progesto-gens and estrogens of Lerner and Lozin-ski would obviously lead to a long-acting contraceptive agent. Likewise, since the individual components are each taught as being injectable, one skilled in the art would expect any mixture of such hor-mones to also be administered by injec-tion. The proportions set forth in claims 2, 5, 7, 9, and 13 are similar to those in Henshaw, and appellant has not alleged that there is any special signifi-cance in the particular range of propor-tions recited. In fact, in regard to the rejection of claims 1, 4, 6, and 8 under 35 U.S.C. § 112 because those claims did not contain proportions, appellant specif-ically argued that the "proportions are not directed to the point of novelty." Many of the long-acting progestogens disclosed in appellant's specification as being satisfactory for use in his inven-tion, including the preferred acetophen-one derivative of 16α, 17α-dihydroxy-

progesterone recited in claims 12–13, are also discussed in Lerner. Similarly, many of the long-acting estrogens set forth by appellant, including the preferred estradiol enanthate claimed in claims 12–13, are also shown in Lozinski. Finally, as to the additional feature of claim 4, we agree with the examiner that the mere addition of a carrier to an obvious therapeutic composition is a common expedient to one of ordinary skill in the art.

As mentioned, a rejection under 35 U.S.C. § 112 was also applied against the claims. The board affirmed as to claims 1, 2, 4, 6, and 8, apparently with reference to the first paragraph of § 112, reasoning that those claims fail to recite an operable range of proportions as disclosed. Both the solicitor and appellant agree that claim 2 must have been included in the § 112 rejection by mistake since claim 2 clearly recites a range of proportions. Since we have already expressed our agreement with the rejection of all claims under 35 U.S.C. § 103, we find it unnecessary to discuss the rejection of claims 1, 4, 6, and 8 under 35 U.S.C. § 112.

The decision of the board is affirmed.

Affirmed.